UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CAROLINA CASUALTY INSURANCE
COMPANY, a Florida
Corporation,

                                  NO. CIV. S-04-2445 FCD PAN

       Plaintiff,

                                  <u>MEMORANDUM AND ORDER</u>

     v.

BOLLING, WALTER & GAWTHROP, a
California Professional
Corporation; THEODORE D.
BOLLING, JR., a California
resident; and DOES 1-50,
inclusive,

       Defendants.

_____/

----oo0oo----

    This matter comes before the court on motion for summary

judgment, pursuant to Fed. R. Civ. P. 56, filed by plaintiff,

Carolina Casualty Insurance Co. ("CCIC").  Defendants, Bolling,

Walter & Gawthorp ("BWG") and Theodore D. Bolling

("Bolling")(collectively "defendants"), oppose the motion and

request dismissal or in the alternative a stay of the action.

1  For the reasons stated herein, plaintiff's motion is GRANTED and
2  defendants request for dismissal or stay is DENIED.

3                              **BACKGROUND**

4       This matter arises out of a dispute between an insurer and
5  an insured over who has the right to determine the identity of
6  legal counsel to represent the insured in a legal malpractice
7  action pending in California superior court.

8       BWG is a professional law corporation, organized under the
9  laws of California and based in Sacramento, California. (Defs.'
10 Sep. Statement of Add'l Facts in Opp'n Summ. J. ("SAF") ¶ 1.)[1]
11 Bolling is an attorney licensed to practice law in California,
12 who is employed by BWG. (SAF ¶ 2.) CCIC is a corporation
13 organized under the laws of the state of Florida, and is in the
14 business of issuing policies of insurance. (SAF ¶ 5.)

15      CCIC issued a Lawyer's Professional Liability Policy to
16 defendants for the period from August 18, 2003 to August 18,
17 2004. (Defs.' Resp. to Pl.'s Sep. Statement of Und. Facts ("Resp.
18 SUF") ¶ 15.) Under the policy, CCIC is obligated to "pay on
19 behalf of the Insured all Damages and Claims Expense[2] that the

20

---

21      [1]  The Eastern District Local Rules provide that a party
opposing a motion for summary judgment may file an additional
22 statement of disputed facts. Here, defendants do not specify
whether the facts in the Separate Statement of Additional Facts
23 are presented as disputed facts or undisputed facts. The
substance of the facts suggests that they are offered as
24 additional undisputed facts. For example, the parties do not
dispute that "CCIC is in the business of issuing policies of
25 insurance." (See SAF ¶ 6.)

26      [2]  The CCIC policy defines "Claims Expense" as "reasonable
and necessary fees, costs and expenses . . . resulting solely
27 from the investigation adjustment, defense and appeal of a Claim
against the Insureds, but excluding salaries, wages, overhead or
28                                              (continued...)

                                  2

Insured shall become legally obligated to pay, arising from any claim first made against an Insured during the Policy Period and reported to the Insurer in writing during the Policy Period or within 60 days thereafter for any Wrongful Act . . .." (Resp. SUF ¶ 16; CCIC Lawyers' Professional Liability Insurance Policy No. 96000832 / 1 (the "Policy"), Ex. D to the Dec. of Carol Weill in Supp. Summ. J. at 2.)  Section VI of the agreement provides:

> A.  An Insured shall not admit liability for, enter into any settlement agreement, stipulate to any judgment, agree to arbitration, or incur Claims Expense without the Insurer's prior written consent. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to full information and all particulars it may request in order to reach a decision regarding such consent. Any Damages and/or Claims Expense incurred and settlements agreed to prior to the Insurer giving its consent shall not be covered hereunder.

> B.  The Insurer shall have the right and duty to defend any Claim to which this insurance applies, even if any allegations of the Claim are groundless, false or fraudulent.  The  Insurer's right and duty to defend any Claim shall end when the Insurer's applicable Limit of Liability has been exhausted by payment of Damages and/or Claims Expense, or has been tendered to, or on behalf of, the Insured, or to a Court of competent jurisdiction.

> C.  Each Insured shall cooperate with the Insurer in the defense and settlement of any Claim, and in enforcing any right of contribution or indemnity against any person or organization that may be liable to the Insured, at no cost to the Insurer. Upon the request of the Insurer, the Insured shall submit to examination and interrogation, under oath if required by a representative of the Insurer, and shall attend hearings, depositions and trials, assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, as well as giving written

---

[2](...continued)
benefit expenses associated with any Insured, or any amount covered by the duty to defend obligation of any other insurer." (Resp. SUF ¶ 18.)

1    statement(s) to the Insurer's representatives, and
2    meeting with such representatives for purposes of
     investigation or defense, all without charge to the
3    Insurer.

4    (Resp. SUF ¶ 17; CCIC Policy at 5.)   The policy provides

5    that defendants have a deductible of $ 50,000.00.   (Resp.

6    SUF ¶ 20.)   The deductible applies to "each and every

7    claim," and CCIC is only liable "for the amount of Damages

8    and/or Claims Expense arising from a Claim which is in

9    excess of the deductible amount . . .."   (Resp. SUF ¶ 19.)

10   The insured "shall, upon written demand of the Insurer," pay

11   the deductible within 30 days.   (Resp. SUF ¶ 19.)

12        On or about June 23, 2003, Derek Vanacore ("Vanacore"),

13   a former client of BWG and Bolling, filed a complaint

14   against defendants in Sacramento County Superior Court (the

15   "Vanacore action").   (Resp. SUF ¶¶ 1-5.)   The complaint

16   alleges causes of action for malpractice and breach of

17   contract.   (Resp. SUF ¶ 6.)

18        By letter dated April 21, 2004, BWG sent notice of the

19   Vanacore action to Monitor Liability Managers, Inc.

20   ("Monitor"), which is responsible for managing claims

21   against CCIC's insureds.   (Resp. SUF ¶ 7; April 21, 2004

22   letter from John Coleman to James Hill at 2, Ex. E to Weill

23   Dec.)   In the letter, BWG also states that "[we] . . . would

24   like to defend ourselves for the time being and charge

25   against our deductible at the rate of $175 per hour."   (Id.)

26        By letter dated May 12, 2004, Monitor rejected

27   defendants' request to defend themselves, stating that

28   "Monitor would like to retain defense counsel to defend this

4

1  Claim." (Resp. SUF ¶ 8; May 12, 2004 from Melissa De Grazia
2  to John Coleman, Ex. F to Weill Dec.)  Monitor further
3  stated that "[p]er the terms of the policy, Monitor has the
4  right to defend any suit against the Insured seeking damages
5  to which the Policy applies." (<u>Id.</u>)  Defendants have
6  continued to conduct their own defense in the <u>Vanacore</u>
7  action. (SAF ¶ 21.)

8      On November 17, 2004, CCIC filed the instant complaint
9  seeking a declaratory judgment that CCIC has a right to
10  control the identity of defense counsel in the <u>Vanacore</u>
11  action and is entitled to replace BWG with counsel of CCIC's
12  choosing. (Comp. ¶ 24.)  Alternatively, if the court does
13  not grant CCIC's request for a declaratory judgment that it
14  is entitled to replace BWG with counsel of its choosing,
15  CCIC requests a declaratory judgment that it is not
16  obligated to defend or indemnify defendants in the <u>Vanacore</u>
17  action.  (Comp. ¶¶ 6, 12.)

18      Defendants indicate that they "are unwilling to pay
19  their $ 50,000.00 deductible to defend a frivolous claim."
20  (Defs.' Mem. Opp'n Summ. J. ("Defs.' Opp'n") at 4.)
21  Defendants contend that they are entitled to defend
22  themselves, at least until their $ 50,000.00 deductible is
23  exhausted.  However, "in the unlikely event that Vanacore
24  were to recover a judgment, BWG and Bolling would expect
25  CCIC to pay the judgment on their behalf up to the policy
26  limit." (Defs.' Opp'n at 4.)
27  /////
28  /////

5

**STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  See Celotex Corp., 477 U.S. at 323-24.   The court must examine all the evidence in the light most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.  See T.W. Elec. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  The evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  See Falls Riverway Realty, Inc. v. City of Niagara Falls, 754 F.2d 49, 57 (2d Cir. 1985);

6

Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

**ANALYSIS**

**I.   Jurisdiction**

Prior to reaching the merits, the court must address defendants' objections to this court's exercise of jurisdiction over plaintiff's complaint, which prays solely for declaratory relief.

The Declaratory Judgment Act provides, in relevant part,

> In a case of actual controversy within its jurisdiction, [subject to exceptions not applicable here] . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The Declaratory Judgment Act "was enacted to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication without having to wait until he is sued by his adversary." Plum Creek Timber Co. Inc. v. Trout Unlimited, 255 F. Supp. 2d 1159, 1164 (D. Idaho 2003)(quoting Levin Metals Corp. v. Parr-Richmond Terminal Co., 799 F.2d 1312, 1315 (9th Cir. 1986).)

A lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution and must fulfill statutory jurisdictional prerequisites. Government Employees Ins. Co. v. Dizol, 133 F.3d 1220,

1222-1223 (9th Cir. 1998)(en banc)(citations omitted).  The
Declaratory Judgment Act does not itself confer federal
subject matter jurisdiction but rather, there must be an
independent basis for such jurisdiction.  Staacke v. United
States Secretary of Labor, 841 F.2d 278, 280 (9th Cir.
1988).  Here, subject matter jurisdiction is properly
predicated on diversity of citizenship.  See 28 U.S.C. §
1332.

     However, even when subject matter jurisdiction exists,
the district court may, in the exercise of its discretion,
decline to entertain the action.  Dizol, 133 F.3d at 1223
(noting that the Declaratory Judgment Act is "deliberately
cast in terms of permissive, rather than mandatory,
authority.")  There is "no presumption in favor of
abstention in declaratory actions generally, nor in
insurance coverage cases specifically."  Id. (stating that
"[w]e know of no authority for the proposition that an
insurer is barred from invoking diversity jurisdiction to
bring a declaratory judgment action against an insured on an
issue of coverage.")

     Defendants contend that this case does not satisfy
Article III's Case and Controversy requirement because it is
not yet ripe for judicial review.  In addition, defendants
ask this court to abstain from exercising jurisdiction over
the matter under Brillhart v. Excess Ins. Co. of America,
316 U.S. 491 (1942).

     **A.   Ripeness**

     The court first addresses defendants' contention that

8

1   the present controversy is not yet ripe for review because

2   (1) defendants will not in any event surrender defense in

3   the underlying action rendering any decision by this court

4   moot, and (2) CCIC's second claim for a declaratory judgment

5   that CCIC owes no duty to indemnify defendants, "is

6   speculative and hypothetical in that any 'harm' to plaintiff

7   as a result of the insureds' alleged breach of the

8   cooperation clause cannot be determined until final

9   disposition of the underlying tort action."  (Defs.' Mem.

10   Opp'n Summ. J. ("Opp'n") at 18.)

11      Initially, defendants' assertion that they will not

12   surrender the defense in the underlying action does not

13   render a declaratory judgment moot.[3]  If this court finds

14   and declares that CCIC has a right to control the defense of

15   the Vanacore action and select defense counsel, and

16   defendants thereafter refuse to surrender control of the

17   defense, CCIC can use the judgment of this court as a

18   defense in any later-filed coverage dispute.  Thus, whether

19   defendants actually surrender the defense does not render

20   moot the present controversy.

21      Defendants' second ripeness argument also fails because

22   CCIC has not moved for summary judgment as to its second,

23   alternative claim for relief.  By this motion, CCIC does not

24

25         [3]    The court notes that this is not actually a "ripeness"
argument.  While both ripeness and mootness are constitutional
26   case or controversy requirements, ripeness "refers to whether an
action is unfit for review due to its prematurity, [whereas] the
27   mootness doctrine focuses on what has happened since the action
was initiated" which would eliminate the previously-live
28   controversy between the parties.  See 15 James Wm. Moore et al.,
Moore's Federal Practice ¶ 101.90 (3d ed. 2005.)

1    seek a judicial determination that the Policy's cooperation

2    clause has been breached.  Rather, it seeks only a

3    determination that it is entitled to control the defense and

4    the identity of defense counsel.  This question presents a

5    "substantial controversy, between parties having adverse

6    legal interests, of sufficient immediacy and reality to

7    warrant the issuance of a declaratory judgment."  <u>Maryland</u>

8    <u>Cas. Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273

9    (1941); <u>Hillblom v. United States,</u> 869 F.2d 426, 430 (9th

10   Cir. 1990).  Accordingly, the court finds the case ripe for

11   review.

12        **B.   Abstention**

13        Defendants next contend that the court should use its

14   discretion to decline jurisdiction over plaintiff's

15   declaratory judgment action.  Even when subject matter

16   jurisdiction exists, the district court may, in the exercise

17   of its discretion, decline to entertain an action for

18   declaratory relief.  <u>Dizol</u>, 133 F.3d at 1223.  A court's

19   decision to abstain from entertaining such a suit must be

20   based on more than "whim or personal disinclination."  <u>Id.</u>

21   (quoting <u>Public Affairs Associates v. Rickover</u>, 369 U.S.

22   111, 112 (1962).  The Ninth Circuit has concluded that the

23   factors articulated in <u>Brillhart v. Excess Ins. Co. of</u>

24   <u>America</u>, 316 U.S. 491 (1942), remain the "philosophic

25   touchstone for the district court."  <u>Id.</u>  As summarized by

26   the Ninth Circuit in <u>Dizol</u>, the relevant factors are:

27

28        The district court should avoid needless determination
          of state law issues; it should discourage litigants

10

1  from filing declaratory relief actions as a means of
2  forum shopping; and it should avoid duplicative
   litigation.  If there are parallel state proceedings
3  involving the same issues and parties pending at the
   time the federal declaratory action is filed, there is
4  a presumption that the entire suit should be heard in
   state court.  The pendency of a state court action does
5  not, of itself, require a district court to refuse
   federal declaratory relief.  Nonetheless, federal
6  courts should generally decline to entertain reactive
   declaratory actions.

7  Dizol, 133 F.3d at 1225 (internal quotations and citations

8  omitted).

9       **1.    Avoiding Needless Decisions of State Law**

10      When the sole basis for federal jurisdiction is

11 diversity of citizenship, "the federal interest is at its

12 nadir and the Brillhart policy of avoiding unnecessary

13 declarations of state law is especially strong."

14 Continental Cas. Co. v. Robsac Indus., 947 F.2d 1367, 1371

15 (9th Cir. 1991), overruled on other grounds by Dizol, 133

16 F.3d at 1227).  However, the instant dispute does not

17 require this court to decide novel questions of state law.

18 To the contrary, the parties' dispute requires

19 interpretation of the Policy.  While this analysis is

20 governed by state law, the principles of contract

21 interpretation are well settled, and there is no state court

22 currently in a position to rule on the matter.

23      **2.  Avoiding Forum Shopping and Duplicative Litigation**

24      "The federal Courts should generally decline to

25 entertain reactive declaratory actions."  Dizol, 133 F.3d at

26 1225.  The Ninth Circuit has explained that a "declaratory

27 judgment action by an insurance company against its insured

28 during the pendency of a non-removable state court action

11

1  presenting the same issues of state law is an archetype of
2  what we have termed 'reactive' litigation." <u>Robsac</u>, 947 F.2d
3  at 1372-1373.  Here, CCIC's claim is not reactive as it does
4  not present any of the same issues involved in the <u>Vanacore</u>
5  action.  In the latter case, the two causes of action are
6  malpractice and breach of the legal services contract.  By
7  contrast, this complaint requires interpretation of an
8  entirely different contract, the Policy issued to BWG by
9  CCIC.  The only direct impact the resolution of this case
10 will have on the underlying litigation is the identity of
11 defense counsel.  This distinguishes the present case from
12 the cases primarily relied on by defendants, <u>American</u>
13 <u>National Fire Ins. CO. v. Hungerford</u>, 53 F.3d 1012 (9th Cir.
14 1995), <u>overruled</u> in part by <u>Dizol</u>, 133 F.3d at 1227, and
15 <u>Employers Reinsurance Corp. v. Karussos</u>, 65 F.3d 796 (9th
16 Cir. 1995), <u>overruled in part by Dizol</u>, 133 F.3d at 1227.
17 Both <u>Hungerford</u> and <u>Karussos</u> involved coverage disputes
18 which required for their resolution factual determinations
19 in the underlying cases.  <u>See Hungerford</u>, 53 F.3d at 1017
20 ("a declaratory judgment in this case would not terminate
21 the existing controversy because 'the policy exclusions can
22 be applied only in light of factual determinations that have
23 not been made [by the state court]."); <u>Karussos</u>, 65 F.3d at
24 800 n.2 ("Plainly, such a determination could be made only
25 after considering issues involved in the state court
26 proceedings.").

27     Defendants cite <u>Karussos</u> for the proposition that it
28 does not matter whether the same issues are involved in the

12

state and federal cases.  <u>Karussos</u> stated that "<u>Hungerford</u>
applies whether or not there is a similarity of issues." 65
F.3d at 801.  CCIC correctly points out that this language
is dicta because in <u>Karussos</u> there was similarity of issues.
Moreover, the broad language from <u>Karussos</u> is inconsistent
with the Ninth Circuit's more recent <u>Dizol</u> opinion, in which
the court explained that "pendency of a state court action
does not, of itself, require the district court to refuse
federal declaratory relief."  <u>Id.</u> at 1225.  Rather, the
presumption against exercising jurisdiction arises in cases
where "there are *parallel* state proceedings *involving the*
*same issues and parties* pending at the time the federal
declaratory action is filed . . .."  <u>Id.</u> (emphasis added).
The broad dicta from <u>Karussos</u> would read out of the rule the
requirement that the federal and state proceedings be
parallel, involving the same issues and parties.

Moreover, <u>Karussos</u>' broad language would preclude
district courts from entertaining coverage disputes whenever
a liability claim was pending in state court.  This too is
inconsistent with <u>Dizol</u>, which provides that "there is no
presumption in favor of abstention in declaratory actions
generally, nor in insurance cases specifically.  'We know of
no authority for the proposition that an insurer is barred
from invoking diversity jurisdiction to bring a declaratory
judgment a action against an insured on the issue of
coverage.'"  <u>Id.</u> (citing <u>Aetna Cas. & Sur. Co. v. Merritt</u>,
974 F.2d 1196, 1199 (9th Cir. 1992)).  As a result, the
court will follow the analysis set forth by the Ninth

13

1    Circuit in <u>Dizol</u>.

2        **3.   Judicial Economy**

3        Finally, judicial economy clearly is served by this

4    court's resolution of the instant dispute.  The parties have

5    fully briefed the merits of the case, and this court is

6    prepared to rule thereon.  If this court were to abstain,

7    CCIC would be required to start over by filing a new

8    complaint in state court, which would needlessly delay

9    resolution of the issues presented, and would require the

10   state court to expend time and resources becoming familiar

11   with the factual and legal issues involved.

12       Because the <u>Brillhart</u> factors weigh heavily in favor of

13   jurisdiction, the court will exercise its discretion to

14   assume jurisdiction over the instant declaratory judgment

15   action.[4]

16   **II.  Merits**

17       CCIC contends that, based on California law and the

18   terms of the Policy, it has the right to control the defense

19   and select defense counsel.  Defendants provide no argument

20   whatsoever in opposition, apparently relying instead on

21   their attack on jurisdiction.  However, defendants assert,

22   without legal support or argument, that they are entitled to

23   ────────────────

24       [4]    Defendants final jurisdictional argument, that this
     court cannot determine if defendants have breached the
25   cooperation clause in the Policy until the underlying dispute is
     resolved, is not well taken.  CCIC does not move for summary
26   judgment on its alternative request for a declaration that
     defendants are in breach of the Policy's cooperation clause.
27   Resolution of the issues properly before the court – whether CCIC
     has a right to control the defense and select defense counsel –
28   is not contingent on the outcome of the <u>Vanacore</u> action.

                              14

1  control the defense of the Vanacore action until their
2  $50,000.00 deductible is exhausted.

3       The court finds that the Policy provides CCIC with the
4  right to select defense counsel and to control the
5  litigation.  First and most importantly, the Policy provides
6  that "the Insurer shall have the *right and duty* to defend
7  any Claim to which this insurance applies, even if any
8  allegations of the Claim are groundless, false or
9  fraudulent."  Both parties agree that the Policy applies to
10 the Vanacore action.[5]  Thus, by the express terms the
11 Policy, CCIC has a right and duty to defend the Vanacore
12 action.  The right and duty to defend affords an insurer the
13 right to control the defense.  See Safeco Ins. Co. v.
14 Superior Court, 71 Cal. App. 4th 782, 787 (1999)("When the
15 insurer provides a defense to its insured, the insured has
16 no right to interfere with the insurer's control of the
17 defense . . ..")(citing Wright v. Fireman's Fund Ins.
18 Companies, 11 Cal. App. 4th 998, 1024 (1992); Pruyn v.
19 Agricultural Ins. Co., 36 Cal. App. 4th 500, 515-516
20 (1995)).

21      The remaining question is whether the right to control
22 the defense also entitles CCIC to select defense counsel.
23 While the Policy does not expressly state that CCIC has a
24 right to select defense counsel, the right to control the
25 defense generally includes the right to select defense
26

27      [5]    While defendants note that the action is frivolous,
   they also acknowledge that, in the event Vanacore were to obtain
   a judgment against defendants, they would seek indemnification
28 from CCIC.

15

1   counsel.  <u>See</u> <u>generally</u> <u>State Farm Mutual Automobile Ins.</u>
2   <u>Co. v. Federal Ins. Co.</u>, 72 Cal. App. 4th 1422, 1429 (1999).
3   A contrary rule would be inconsistent with the insurer's
4   right to control the defense and would place the insurer in
5   the untenable position of being financially liable, but
6   powerless to ensure the claim is properly defended.  <u>See</u>
7   <u>e.g.,</u> <u>James Finley and Vanida Finley v. The Home Ins. Co.</u>
8   <u>And Hawaii Ins. Guar. Ass'n</u>, 90 Haw. 25, 31-32 n.9 (1998)
9   ("Because of their financial stake in effective claims
10  resolution, insurers have a contractual right to control
11  their insureds' defenses . . ..")(citations and internal
12  quotations omitted); <u>Davenport v. St. Paul Fire and Marine</u>
13  <u>Ins. Co.</u>, 978 F.2d 927 (5th Cir. 1992)("Because the
14  [insurance] company is footing the bill for the defense, and
15  will be obligated to pay any judgment rendered . . ., it is
16  clearly entitled to select the attorney and conduct the
17  defense.")

18      Defendants' position that they have a right to defend
19  themselves up to the amount of their $ 50,000.00 deductible
20  defies a common sense reading of the insurance contract.
21  According to defendants' interpretation, CCIC's right to
22  control the defense would vest after the litigation process
23  is well underway – after litigation strategy had been
24  developed, discovery initiated or perhaps completed, and
25  potentially adverse irrevocable decisions made to which the
26  insurer would be bound.  The contract yields no such
27  interpretation.

28      Read as a whole, the Policy clearly envisions that

1   CCIC, and not defendants, will select defense counsel.  The
2   Policy provides that the insured "shall not . . . incur
3   Claims Expense without the insurer's prior written consent."
4   "Claims Expense" expressly includes attorneys fees.  These
5   Policy provisions clearly vest CCIC with authority over any
6   claims-related expense, whether incurred before or after the
7   deductible is exhausted.  Thus, defendants cannot "charge
8   [attorneys fees] against [their] deductible" without prior
9   written approval.  (Resp. SUF ¶ 7.)

10       Based on the foregoing, and in light of defendants'
11  failure to submit any argument in opposition to CCIC's
12  construction of the Policy terms, the court finds that there
13  is no triable issue of fact and that, as a matter of law,
14  CCIC is entitled to a declaratory judgment that CCIC has a
15  right to control the defense of the Vanacore action and to
16  select defense counsel.

17                          **CONCLUSION**

18       For the foregoing reasons, CCIC's motion for summary
19  judgment is GRANTED.  The court decrees and declares as
20  follows:

21       (1) Pursuant to the Policy, CCIC is entitled to control
22  the defense of, and select defense counsel in, the Vanacore
23  action, Sacramento County Superior Court case no.
24  03AS03501.[6]

25  _____

26       [6]   CCIC requests a further declaration that "BW&G is
    required to cooperate with defense counsel and pay the new
27  defense counsel until the $ 50,000.00 deductible is exhausted."
    (Pl.'s Mem. at 16.)  CCIC does not provide any argument to
28                                              (continued...)

                              17

1    (2) Any expenses incurred by defendants to self-defend

2    the <u>Vanacore</u> action, for which defendants did not receive

3    prior written approval from CCIC, cannot be chargeable

4    against defendants' deductible as "Claims Expenses" under

5    the Policy.

6        IT IS SO ORDERED.

7    DATED: May 31, 2005

8    _____    /s/ Frank C. Damrell Jr.
                                           FRANK C. DAMRELL, Jr.
9                                          UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   _____

25        [6](...continued)
     support its request for either declaration.  CCIC also requests a
26   declaration that "the amounts incurred by BW&G in self-defending
     do not count towards the satisfaction of the deductible, as they
27   were not consented to by CCIC."  However, CCIC did not request
     this relief in the complaint.  (<u>See</u> Complaint  at 12.)
28   Accordingly, the court makes no order as to these requests.